Kenneth BOYER, Plaintiff,

v.

DIVERSIFIED CONSULTANTS, INC., et al., Defendants.

Case No. 14–cv–12339.

United States District Court, E.D. Michigan, Southern Division.

Signed April 20, 2015.

Amanda Marie Longendyke, Carl Schwartz, Ian B. Lyngklip, Julie A. Petrik, Lyngklip & Associates Consumer Law Center, PLC, Southfield, MI, Rex C. Anderson, Davison, MI, for Plaintiff.

Bryan C. Shartle, Sessions, Fishman, Nathan & Israel, L.L.C., Metairie, LA, Charity A. Olson, Olson Law Group, Ann Arbor, MI, Deborah A. Lujan, Collins, Einhorn, Southfield, MI, James K. Schultz, Sessions, Fishman, Nathan & Israel, Chicago, IL, Michael D. Slodov, Sessions, Fishman, Nathan & Israel, LLC, Chagrin Falls, OH, for Defendants.

### ORDER GRANTING DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS [48]

JUDITH E. LEVY, District Judge.

Defendants Diversified Consultants, Inc. ("DCI"), and LiveVox, Inc. bring this motion to strike class allegations from plaintiff Kenneth Boyer's complaint. (Dkt. 48.)

A motion to strike class allegations arises under Fed.R.Civ.P. 12(f), which permits the Court to "strike from a pleading an insufficient defense or any redundant, impertinent, or scandalous matter" and Fed.R.Civ.P. 23(d)(1)(D), which permits the Court to issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly[.]"

On June 13, 2014, plaintiff filed a complaint alleging individual and class violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. (Dkt. 1.) The TCPA prohibits the "mak[ing] [of] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

Plaintiff proposed two classes in his complaint: an Autodialer Class and a Prerecorded or Artificial Voice Message Class. The Autodialer Class consists of:

i. All persons residing in the territorial United States, excluding the Court and its staff,

ii. who subscribed to a cellular telephone to which DCI dialed, or initiated, a call using an ATDS in the four years preceding the filing of this compliant,

iii. who did not provide his or her phone number to DCI or the creditor as an authorized contact number for the alleged debt on which DCI attempted to collect.

(Dkt. 1 at 8.) The Prerecorded or Artificial Voice Message Class consists of:

i. All persons residing in the territorial United States, excluding the Court and its staff,

ii. who subscribed to a cellular telephone to which LiveVox delivered, or con-

veyed, a prerecorded or artificial voice message in the four years preceding the filing of this complaint,

iii. who did not provide his or her phone number to DCI or the creditor as an authorized contact number for the alleged debt on which DCI attempted to collect.

(*Id.* at 8–9.)

 Defendants now argue that these classes constitute impermissible "failsafe" classes. "[A] class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir.2012) (citing *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)). A failsafe class, by its nature, "includes *only* those who are *entitled* to relief." *Young*, 693 F.3d at 538 (emphasis in original). "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." *Id.* (quoting *Randleman*, 646 F.3d at 352).

 Plaintiff argues that it is premature for the Court to address defendants' objections to his proposed class definitions because the classes are either not failsafe classes or discovery will allow him to redefine the classes in a manner that avoids a failsafe class. The issue before the Court, however, is whether the classes as currently defined are legally permissible. If a defendant can clearly show that a class definition is legally impermissible, fairness and efficiency require that the Court address the issue in response to a properly filed motion.

I. Failsafe Classes in the TCPA Context

In *Sauter v. CVS Pharmacy*, Case No. 2:13–cv–846, 2014 WL 1814076 (S.D.Ohio May 7, 2014), the court surveyed TCPA cases in which defendants filed motions to strike what they contended were impermissible failsafe classes. *Id.*, at *6–8. The *Sauter* court reviewed *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287 (N.D.Ill.2014), *Lindsay*

*Transmission, LLC v. Office Depot, Inc.*, Case No. 12–cv–221, 2013 WL 275568 (E.D.Mo. Jan. 24, 2013), and *Olney v. Job. com, Inc.*, Case No. 12–cv–01724, 2013 WL 5476813 (E.D.Cal. Sept. 30, 2013).

The *Wolfkiel* court concerned a "No–Consent Class" defined as:

All individuals in the United States (1) whose mortgage is held or serviced by Defendant Ocwen; (2) who received a telephone call; (3) on a cellular telephone number; (4) promoting Defendant Intersections' products or services; (5) who never consented to receive telemarketing calls promoting Defendant Intersections' products or services.

*Wolfkiel*, 303 F.R.D. at 292. Analyzing the class under *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir.2012) and *Young*, the *Wolfkiel* court held that it was "not yet persuaded the No–Consent class qualifie[d] as a fail-safe class." *Wolfkiel*, 303 F.R.D. at 294. This was so because the issue of consent could, in that case, potentially "be addressed on a class-wide basis where the source of the contact information for all of the recipients of unwanted faxes was a single "leads" list compiled by a third party." *Id.* (citing cases). *Wolfkiel* concerned a case where the lack of consent could potentially be traced to a single event—there, a purchase of "product A from company Y" that led to "being solicited by company Z selling wholly unrelated product B[.]" *Id.*

Both the *Lindsay* and *Olney* courts struck TCPA class claims. In *Lindsay*, the plaintiff sought to certify a nationwide class defined as:

All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes, (4) with whom Defendant does not have an established business relationship and (5) which did not display a proper opt out notice.

*Lindsay Transmission, LLC*, 2013 WL 275568, at *3.

The *Olney* plaintiff sought to certify a nationwide class defined as:

All persons within the United States who received any telephone call from Defendant to said person's cellular telephone made through the use of any automated telephone dialing system or an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

*Olney*, 2013 WL 5476813, at *10.

In both cases, the courts found that the classes consisted "solely of persons who can establish that defendant violated the TCPA," and struck the classes. *Lindsay Transmission, LLC*, 2013 WL 275568, at *4; *see also Olney*, 2013 WL 5476813, at *11 (holding that "defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class."). However, in *Olney*, the court permitted the plaintiff to amend the proposed class definition to include:

All persons within the United States who received any telephone call/s from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.

*Id.* at *11.

The *Sauter* court addressed one proposed class definition and two proposed subclass definitions. The first was a class:

of all persons within the United States who received a non-emergency telephone call from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and *who did not provide prior express consent for such calls*, at any time within the four years prior to the filing of the instant Complaint.

*Sauter*, 2014 WL 1814076, at *8 (emphasis in original). The subclasses consisted of:

[a]ll persons within the United States who received a non-emergency telephone call on or after October 16, 2013 from CVS to a

cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and *who did not provide prior express written consent* for such calls.

[and]

all persons within the United States who received a non-emergency telephone call from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and *who had expressly revoked any consent* previously given to CVS for such calls, at any time within the four years prior to the filing of the instant Complaint.

*Id.* at *8–9 (emphasis in original).

The *Sauter* court held that all three classes were failsafe classes, but, as in *Olney*, granted the plaintiff leave to amend his complaint to fix the failsafe problem. *Id.* at *9.

## II. Plaintiff's Proposed Classes

■ Plaintiff's proposed classes do not expressly use the words "consent," "prior consent," or "prior express permission or invitation," as the above-referenced cases did. Instead, plaintiff's classes consist of those persons "who did not *provide* his or her phone number to DCI or the creditor as an authorized contact number for the alleged debt on which DCI attempted to collect." (Dkt. 1 at 8, 9.)

The TCPA prohibits calls to cellular telephones using an automatic telephone dialing system without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). Accordingly, "defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class." *Sauter*, 2014 WL 1814076, at *9 (quoting *Olney*, 2013 WL 5476813, at *11).

Plaintiff argues that his proposed class definitions use " 'objective' criteria rather than a conclusion of liability to define the class." (Dkt. 52 at 3.) This objective criteria, plaintiff states, will "rest[ ] upon a fact— consent[.]" (*Id.*) Plaintiff contends that he has not defined a class based on the issue of

consent, but has instead defined a class based on the objective fact of consent, which will be established through discovery.

Plaintiff makes a distinction without a difference. His class consists of those people who did not provide a cellular telephone number to defendants, but were still called by defendants ... without those people's prior express consent. Plaintiff is attempting to avoid the consequences of overtly defining his classes in terms of prior express consent by making consent an unspoken yet central implication of his classes. Plaintiff's classes consist of those people who did not provide prior express consent to be contacted by defendants, and therefore can establish a violation of the TCPA.

As set forth in *Sauter* and *Olney,* when impermissible class allegations are stricken at this early stage in the litigation, plaintiffs should be given leave to amend their complaint to proceed with their allegations, particularly where "[t]he relatively small amount of money that each individual plaintiff could possibly recover suggests that a class action is the only real meaningful way to afford relief in this case." *Randleman,* 646 F.3d at 356.[1]

Accordingly, the Court will grant plaintiff fourteen days to file an amended complaint.

For the reasons set forth above, it is hereby ordered that:

Defendants' motion to strike class allegations (Dkt. 48) is GRANTED; and

Plaintiff is GRANTED until May 4, 2015 to file an amended complaint. After defendants file their responsive pleadings, the Court will set a date for an in-person conference to reset the dates in this matter and address any outstanding discovery issues.

IT IS SO ORDERED.

1. Striking class allegations prior to completion of class discovery is a tool to be used sparingly. The presumption in a class action lawsuit should be that plaintiffs will have the opportunity to conduct discovery and proceed to argue certification of the class. The Court strikes the class allegations here because, as defined, they are legally impermissible. When the question regarding a class definition is whether it can satisfy the criteria set forth in Fed.R.Civ.P. 23, and the class definition is not barred by clearly established law (as in the case of consent-defined TCPA classes in the Sixth Circuit), plaintiffs should generally be allowed to proceed to the certification stage.